**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

LESLIE CURTRIGHT,

        Plaintiff,

v.                                   Case No. 22-10449

FCA US, LLC, et al.

        Defendants.

_____/

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

Pending before the court is the "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" filed by Defendants International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"), UAW Local 51 ("Local 51"), and Tony Walker (collectively, "Union Defendants") (ECF No. 34). Also pending is FCA US, LLC's "Motion to Dismiss Counts I and VIII of Plaintiff's Amended Complaint" (ECF No. 32). The motions are fully briefed. [1] The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, the court will grant in part and deny in part Defendants' motions.

### I. BACKGROUND[2]

Plaintiff was an employee of FCA in the Detroit Assembly Complex - Max facility ("DACM"). FCA and UAW entered into a collective bargaining ("CBA") that governs the

_____

[1]    Plaintiff has also filed a "Motion for Leave to File Sur-Reply to Union Defendants' Reply Brief in Support of Motion to Dismiss." (ECF No. 41.) As indicated in this Opinion and Order, this motion is granted in part.

[2]    Facts are taken from Plaintiff's Amended Complaint (ECF No. 28).

terms and conditions of employment for unionized automobile manufacturing employees. Local 51 is a chapter of UAW and represents union members who work in DACM, including Plaintiff.

Plaintiff's claims arise out of two incidents. First, in May 2021, while attempting to help a co-worker, Plaintiff got into a verbal altercation with a heterosexual security guard. Despite video and witnesses' testimony refuting a policy violation by Plaintiff, she was suspended for three days without pay, supposedly because Canty, who managed FCA's Labor Relation at DACM, was romantically involved with the security guard. Upon returning to work, Plaintiff repeatedly asked Local 51 to file a grievance to recoup her lost wages. A grievance form was filled out in June 2021, but it was incomplete. In November 2021, Plaintiff learned from UAW that it was unfiled.

Second, on September 20, 2021, Plaintiff was allegedly threatened and insulted by a heterosexual male co-worker, Kali Gaiter, who had verbally harassed Plaintiff since May 2021. Plaintiff sought help from her team leader and made a report to Walker, Local 51's Union Steward. After Canty and Walker spoke to Plaintiff and Gaiter separately on the next day, Plaintiff was suspended pending an investigation. For the next several months, Plaintiff made numerous inquiries and complaints about her employment and the union representation. Ultimately, Plaintiff received a notice of discharge and was never returned to work, even though Walker and Local 51 had affirmed that she was not terminated and that they would handle her grievance.

Plaintiff asserts 14 claims:

- Count I – Wrongful termination as to FCA;

- Count II – Gender and/or Sexual Orientation Discrimination in violation of the Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") as to FCA and Canty;

- Count III – Gender and/or Sexual Orientation Discrimination in violation of Title VII of the Civil Rights Act ("Title VII") as to FCA;

- Count IV – Retaliation in violation of ELCRA as to FCA and Canty

- Count V – Retaliation in violation of Title VII as to FCA;

- Count VI – Hostile Work Environment in violation of ELCRA as to FCA;

- Count VII – Hostile Work Environment in violation of Title VII as to FCA;

- Count VIII – Breach of the CBA as to FCA;

- Count IX – Breach of the Duty of Fair Representation ("DFR") as to the Union Defendants;

- Count X – Breach of Contract as to UAW and Local 51;

- Count XI – Gender and/or Sexual Orientation Discrimination in violation of ELCRA as to the Union Defendants;

- Count XII – Gender and/or Sexual Orientation Discrimination in Violation of Title VII as to Local 51;

- Count XIII – Retaliation in violation of ELCRA as to the Union Defendants; and

- Count XIV – Retaliation in violation of Title VII as to Local 51

## II. STANDARD

Federal Rule of Civil Procedure 8 requires Plaintiff to present in the Complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its

3

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Iqbal*, 556 U.S.at 678 (citing *Twombly*, 550 U.S. at 556). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

A complaint falling short of this pleading requirement is subjected to dismissal under Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss made thereunder, the court construes the complaint in the light most favorable to the nonmovant – here, Plaintiff – and accepts all well-pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015). The court may consider "any exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528

F.3d 426, 430 (6th Cir. 2008). The movants "ha[ve] the burden of proving that no claim

exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield,* 552 F.3d

430, 434 (6th Cir. 2008).

### III. DISCUSSION

### A.  UNION DEFENDANTS' MOTION

### 1.  Breach of Contract Claim Against Local 51 and UAW (Count X)

Section 301 of the Labor Management Relation Act ("Section 301"), 29 U.S.C.

§185, "preempts any state-law claim arising from a breach of a collective bargaining

agreement [("CBA")]." *Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004) (citing

*Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989)). Plaintiff does not

dispute that her breach of contract claim against Local 51 is preempted by Section 301.

As to the claim against UAW, Plaintiff cannot avoid federal preemption by merely

asserting that UAW "has made agreements within its Constitution, not CBA[,] to oppose

Local 51 in the event. . . Local 51 is discriminating against a member." (ECF No. 38,

PageID.597.) It is well-established that "intra-union matters are now preempted on the

same terms as are labor-management matters." *Tisdale v. United Ass'n of Journeymen*

*& Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, Loc. 704*, 25 F.3d

1308, 1310 (6th Cir. 1994).

Accordingly, Count X will be dismissed with prejudice.

### 2.  DFR Claim (Count IX)

#### *a.  Against UAW*

A union breaches its duty of fair representation if its conduct in representing a

union member was arbitrary, discriminatory, or in bad faith – "three separate and distinct

possible routes by which a union may be found to have breached its duty." *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994). Conduct is arbitrary if it falls "so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal quotation marks and citation omitted). Conduct is discriminatory if it is "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971). Finally, conduct is in bad faith if it is undertaken "with an improper intent, purpose, or motive encompassing fraud, dishonesty, and other intentionally misleading conduct." *Ohlendorf v. United Food & Commercial Workers Int'l Union, Local 876*, 883 F.3d 636, 644 (6th Cir. 2018).

UAW posits that "Plaintiff's [Amended] Complaint fails to allege *any* wrongdoing by [UAW] *or facts from which it could be inferred* a representative of [UAW] engaged in conduct that was arbitrary, discriminatory, or in bad faith." (ECF No. 34, PageID.550.) (emphasis in original). The court agrees. Plaintiff alleges interactions she had with UAW agents, but the court finds nothing that is inferably wrongful, let alone arbitrary, discriminatory, or in bad faith. (*See* ECF No. 28, PageID.388-91, ¶¶ 69, 74, 79.)[3]

In her Response, Plaintiff argues that UAW "failed to demand or file a grievance to comply with Collective Bargaining Agreement." (ECF No. 38, PageID.629-30.)[4] But this claim cannot be maintained in light of the CBA's provision defining UAW's role in

---

[3]    Plaintiff did not specify where in her Amended Complaint is the allegation that in November 2021, UAW "invoked its duty to represent Plaintiff and took ownership of Plaintiff's grievance process" (ECF No. 38, PageID.629.), and the court finds none.

[4]    This assertion ostensibly contradicts another assertion in Plaintiff's Response that "Local 51 did not process the grievance on its own accord, but at Defendant [UAW]'s request." (ECF No. 38, PageID.631.)

the grievance process. Under the CBA, which Plaintiff referenced in her Amended Complaint and attached as an exhibit to her initial Complaint, UAW's role is not to "demand or file a grievance." Indeed, UAW does not get involved until "Step 4," the final step. (ECF No. 1-1, PageID.39-40.) Plaintiff does not allege that her grievances ever reached that step.

Plaintiff recognizes that UAW cannot automatically be held responsible for the acts of Local 51 and its agents. (ECF No. 38, PageID.630.) Nonetheless, she claims that UAW "has an agency relationship, authority and control over Local 51's grievance and other matters," which subjects UAW to liability for Local 51's alleged wrongdoings. (ECF No. 38, PageID.630-31.) She asserts that "actual control was exemplified as Defendant Local 51 complied entirely with [UAW's] requests," that "Local 51 did not process the grievance on its own accord, but at [UAW's] request" and that "[UAW's] agent recognized the need for control and stated, [sic.] he would take control of Plaintiff's claim." (*Id.*, PageID.631.) However, Plaintiff does not specify to where in her 57-page Amended Complaint that the court can locate these assertions or make such inferences. [5] The court need not do the work for Plaintiff, and her bare assertions are insufficient to survive a motion to dismiss. *See Emerson v. Novartis Pharms. Corp.,* 446 F. App'x 733, 736 (6th Cir. 2011); *Al-Janabi v. Wayne State Univ.,* No. 20-12655, 2021 WL 1224205, at *5 (E.D. Mich. Apr. 1, 2021) (Cleland, J.), *aff'd sub nom. Al -Janabi v. Wayne State Univ.,* No. 21-1399, 2021 WL 8264677 (6th Cir. Dec. 15, 2021).

---

[5]    During the Plaintiff's alleged interaction with UAW, it responded to Plaintiff's complaint about Local 51, but that alone does not demonstrate that the UAW controlled, or controls, Local 51 such that vicarious liability may be imposed. *See Kendel v. Loc. 17AUnited Food &, Com. Workers*, 748 F. Supp. 2d 732, 743 (N.D. Ohio 2010).

Because Plaintiff has failed to plead a plausible Breach of DFR claim against UAW, it will be dismissed with prejudice.

### b. Against Walker

Plaintiff has not disputed that Section 301 does not authorize claim for damages against individual defendants. *See Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 415, (1981). Thus, her claim from breach of DFR against Walker will be dismissed with prejudice for failure to state a claim.

### c. Against Local 51

#### i.   Failure to Exhaust Contractual Remedies

"An employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301(a) of the Labor Management Relations Act." *Clayton v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.,* 451 U.S. 679, 681 (1981). Here, Local 51 argues that Plaintiff's claim fails because she did not wait until her grievances against FCA were completed in accordance with the procedure set out in the CBA (ECF No. 34, PageID.554.) [6]

Undisputedly, Plaintiff may seek judicial intervention without exhausting the remedies provided in the CBA if "the union has sole power under the contract to invoke

---

[6]    Local 51 does not argue that Plaintiff has failed to exhaust the internal union procedures, which are "significantly different" from those created by the CBA. *Clayton,* 451 U.S. at 687; *cf. Chapman v. United Auto Workers Loc*. 1005, 670 F.3d 677, 682 (6th Cir. 2012).

the higher stages of the grievance procedure, and … the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance." *Vaca v. Sipes,* 386 U.S. 171, 185 (1967). Here, Plaintiff alleges that Local 51 breached the DFR by failing to file and pursue her grievances (*e.g.,* ECF No. 28, PageID.408-09.) Absent a serious challenge to these assertions,[7] Plaintiff's DFR claim against Local 51 will not be dismissed for failure to exhaust at this juncture.

### ii.   Statute of Limitations

Local 51 also argues that the DFR claim as to the June 2021 grievance should be dismissed as being time-barred. (ECF No. 34, PageID.555-56.). Rule 12(b)(6), under which Local 51's motion is brought, "is generally an inappropriate vehicle for dismissing a claim based upon a statute of limitations." *Engleson v. Unum Life Ins. Co. of America*, 723 F.3d 611, 616 (6th Cir. 2013) (citing *Caltado v. U.S. Steel Corp.*, 676 F.3d 542, 548 (6th Cir. 2012)). "Dismissal can be appropriate, though, if the 'allegations in the complaint *affirmatively* show that the claim is time-barred.'" *Michalak v. LVNV Funding, LLC*, 604 F. App'x 492, 493 (6th Cir. 2015) (emphasis in original) (citing *Caltaldo*, 676 F.3d at 547). Put differently, a statute of limitations challenge would only be "susceptible to resolution" if Plaintiff "affirmatively pleads herself out of court." *Rembisz v. Lew*, 590 F. App'x 501, 504 (6th Cir. 2014).

---

[7]      The motion does not address Plaintiff's failure-to-file-grievance assertions (ECF No. 34, PageID.553-54) and the reply brief only cursorily mentions the insufficiency of Plaintiff's breach of DFR [7] in a footnote (ECF No. 40, PageID.676). It is well accepted that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (citation and alterations in original omitted).

Here, the Amended Complaint alleges that Plaintiff became aware of Local 51's failure to file her June 2021 grievance in November 2021 – i.e., within the statute of limitations. (ECF No. 28, PageID.390, ¶74.) Even so, Local 51 posits that Plaintiff should have known of the non-filing in July 2021, because the CBA requires FCA to respond within five days after the grievance was filed, and there was no response from FCA. (ECF No. 34, PageID.556.) But this is too large a leap. The same CBA provision also provides that the time limit to answer to a grievance "may be extended at any time by agreement between the Company and the Union." (ECF No. 1-1, PageID.37.) The lack of FCA's response alone also does not amount to Local 51's "unequivocal position" that it will not file the grievance. *McCreedy v. Loc. Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987). In any case, as demonstrated by the parties' briefings, to conclusively determine when Plaintiff should have discovered that the June 2021 grievance was abandoned, the court would have to review information outside the Amended Complaint, such as whether she inquired into that grievance and what Local 51 told her.

Therefore, at this stage, the court will not dismiss Plaintiff's DFR claim against Local 51 as to the June 2021 grievance for being time-barred.

### 3. Title VII Claims against Local 51 (Counts XII and XIV)

Local 51 argues that Plaintiff's Title VII claims should be dismissed for failure to properly exhaust the administrative remedies. Specifically, Local 51 claims that Plaintiff did not file a charge with the EEOC before filing this lawsuit, but only after, and then immediately obtained a "right to sue" letter, thereby depriving Local 51 of notice and the

10

EEOC of an opportunity to investigate and attempt conciliation. (ECF No. 34, PageID.558.) The court agrees.

To recover under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.,* a plaintiff must first timely file a charge with the Equal Employment Opportunity Commission (EEOC). *Amini v. Oberlin College,* 259 F.3d 498 (6th Cir.2001); *Cox v. Memphis,* 230 F.3d 199, 201-02 (6th Cir.2000). The purpose of requiring the filing of EEOC charges "is to provide the [EEOC] with sufficient information so that it may notify prospective defendants and to provide the EEOC with the opportunity to eliminate the alleged unlawful practices through informal methods of conciliation." *Howlett v. Holiday Inns Inc.,* 49 F.3d 189, 196 (6th Cir.1995). "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr.v. Brown*, 466 U.S. 147, 152 (1984).

"Conciliation is an important purpose of the requirement that a claimant first file with an administrative agency." *Vinson v. Ford Motor Co.,* 806 F.2d 686 (6th Cir.1986); *Randolph v. Ohio Dep't of Youth Servs.,* 453 F.3d 724, 731 (6th Cir. 2006) ("[The exhaustion] requirement exists so that the EEOC will have an opportunity to convince the parties to enter into voluntary settlement, which is the preferred means of disposing of such claims.") [8] When a plaintiff "essentially withdrew his EEOC claim by initiating [his lawsuit] prior to the EEOC's disposition of his claim," this court has found a failure to

---

[8]     In their motion, Union Defendants assert that exhaustion requirement is not satisfied because the manner Plaintiff filed her EEOC charge forecloses conciliation opportunity, but they did not offer any supportive authorities until their reply brief. Accordingly, the court will consider Plaintiff's argument on this issue in her proposed sur-reply (ECF No. 41-1, PageID.699-700.)

exhaust administrative remedies, because the EEOC was deprived of the opportunity to attempt conciliation or voluntary settlement. *Dillard v. Inalfa Roof Sys.,* No. 05 CV 72621 DT, 2006 WL 2375701, at *8 (E.D. Mich. Aug. 16, 2006) (Cleland, J.).[9]

Here, Plaintiff's "attachment" to the Amended Complaint states that she filed her charge of discrimination in June 2022 and received her right to sue letter against "UAW" on June 14, 2022.[10] (ECF No. 30, PageID.431.) Indisputably, these events occurred after Plaintiff's first attempt to assert her Title VII claim in May 2022. (ECF No.20; ECF No. 41-1, PageID.700.) Here, like in *Dillard*, the EEOC was deprived of the opportunity to investigate and attempt conciliation because Plaintiff initiated her Title VII claim before filing an EEOC charge and receiving the notice of right to sue. In fact, the EEOC's Dismissal and Notice of Rights" specifies that Plaintiff's charge against "UAW" was closed because "[t]hese allegations are already being defended in federal court against this respondent." (ECF No. 30-1, PageID.434.)

Plaintiff does not sincerely dispute Union Defendants' contention to this effect. Instead, she claims that because she started the EEOC process "much earlier than June 8, 2022," that should somehow excuse her from following through till the end. (ECF No. 41-1, PageID.700.) But there is no basis for this assertion. Nor has one been offered for Plaintiff's request of a judicially created exception in this case. (*Id.*, PageID.701-02.) The court need not entertain these poorly supported propositions.

---

[9]   Even though *Dillard* decided a motion for summary judgement, its ruling is applicable here where there is no dispute of facts.

[10]   This "attachment" was filed on July 4, 2022, 26 days after Plaintiff file the Amended Complaint.

Alternatively, Plaintiff asks that the court dismiss her Title VII claims without prejudice so that she can appeal the dismissal of her charge with the EEOC and allow it the opportunity to investigate and attempt conciliation, which, she claims, remains available. (ECF No. 41-1, PageID.701-02.) The court has questions about the practicality of Plaintiff's proposed recourse, but Local 51 has made no objection. (ECF No. 42.)

Thus, the court will dismiss Plaintiff's Counts XII and XIV without prejudice to be refiled once Plaintiff has properly exhausted the administrative process.

### 4.  State Discrimination and Retaliation Claims (Counts XI and XIII)

#### a.  Federal Preemption

In arguing that Plaintiff's ELCRA claims are federally preempted, Union Defendants are notably ambiguous as to the basis of their assertion.[11] Ultimately, Union Defendants claim that they are relying on the so-called "DFR Preemption Doctrine." (ECF No. 40, PageID.673.) However, the court is not persuaded.

The "DFR Preemption Doctrine" ostensibly originates from a judicially created principle that a union, as the exclusive representative agent corollary to Section 9(a) of the National Labor Relation Act ("NLRA"), has a duty to fairly represent its members.[12]

---

[11]    Plaintiff could reasonably construe Union Defendants argument as advancing Section 301 preemption. First, Union Defendants argue that Plaintiff's ELCRA claims are preempted because they are "based on the same allegations as her claims asserting a breach of the DFR" (ECF No. 34, PageID.549), which are made under Section 301 (*See* ECF No. 28, PageID.407, ¶¶169, 171, 173). Second, Union Defendants refer the court to the arguments "regarding preemption of the breach of contract claims" (ECF No. 34, PageID.549); which are arguments for Section 301 preemption. (*Id.*, PageID.546-548.) Finally, Union Defendants rely on cases that apply Section 301 preemption. (*Id.*, PageID.549.)

[12]    The principle was first developed in a series of cases where unions certified as the exclusive bargaining representatives under the Railway Labor Act allegedly

*Pratt v. United Auto., Aerospace & Agr. Implement Workers of Am., Loc. 1435,* 939 F.2d 385, 388 (6th Cir. 1991) ("Section 9(a) of the National Labor Relations Act, by virtue of its grant of exclusive representation status to a union over employees that make up a bargaining unit, creates a duty of fair representation on the representative union."); *Emswiler v. CSX Transp., Inc.,* 691 F.3d 782, 793 (6th Cir. 2012) (citing *Vaca,* 386 U.S. at 177). This duty stands apart from the union's obligations under the CBA. Unlike in a Section 301 claim, a claim for breach of the NLRA's duty of fair representation "does not depend on the existence of a collective bargaining agreement." *Pratt*, 939 F.2d at 388 (citing *Storey v. Local* 327, 759 F.2d 517, 523 (6th Cir. 1985)).

A state-law claim may be preempted based on federal labor law principles outside of Section 301. *See Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 410, n.8 (1988) ("Although § 301 pre-empts state law only insofar as resolution of the state-law claim requires the interpretation of a collective-bargaining agreement . . ., it is important to remember that other federal labor-law principles may pre-empt state law."). However, the "DFR Preemption Doctrine" is not as omnipotent as Union Defendants claim it to be. The cases cited by Union Defendants, which held that state discrimination laws preempted under the "DFR Preemption Doctrine" are not binding upon the court; nor are they particularly persuasive, as they primarily relied on cases that are distinguishable and/or apply Section 301 preemption.

For example, one of the oft-cited cases in support of the "DFR Preemption Doctrine" is *Maynard v. Revere Copper Prod., Inc.,* 773 F.2d 733 (6th Cir. 1985). That

---

engaged in racial discrimination. *Vaca,* 386 U.S. at 177-78. It was then extended to unions certified under the NLRA. *See id.* at 177; *see also Ford Motor Co. v. Huffman,* 345 U.S. 330 (1953); *Humphrey v. Moore*, 375 U.S. 335 (1964).

case involved claims against a union for discrimination under the Michigan
Handicappers' Civil Right Act and breach of duty of fair representation under section
301 of the Labor Management Relation Act. *Id.* at 734. There, "the only provision of the
Handicappers' Act which could provide a cause of action to the plaintiffs" is the
provision prohibiting a labor organization from "[f]ail[ing] to fairly and adequately
represent a member in a grievance process because of a member's handicap." *Id.* at
735. The district court "concluded that this provision created no new rights for an
employee and imposed no duty on a union not already clearly present under existing
labor law." *Id.* The Sixth Circuit agreed, and in that context, stated that "[t]he duty of fair
representation relates to an area of labor law which has been so fully occupied by
Congress as to foreclose state regulation." *Id.* However, this case is distinguishable,
because Plaintiff's claims rest on the general duty not to discriminate and retaliate under
ELCRA, rather than a provision specifically requiring a labor union to represent its
members fairly and adequately. *See Smolarek,* 879 F.2d at 1334, n.4; *King v. Detroit
Diesel Corp.,* No. 11-11895, 2012 WL 4475723, at *5 (E.D. Mich. Sept. 27, 2012)
(Lawson, J.). Additionally, the preempting force in *Maynard* is Section 301, not the
federal policy on the duty of fair representation doctrine. *Cf. Smolarek,* 879 F.2d at
1334, n.4 ("[In *Maynard,*] we found that an employee's claim for damages against his
union for breach of the union's duty of fair representation, brought pursuant to a
provision of Michigan's HCRA, was preempted by § 301.").

Instead, the court finds most persuasive *Bredesen v. Detroit Fed'n of Musicians,
Loc. No. 5, Affiliated with Am. Fed'n of Musicians,* 165 F. Supp. 2d 647 (E.D. Mich.
2001) (Rosen, J.). There, a female "house contractor" alleged that the union

representatives had negotiated more pay for the male counterparts and retaliated against her when she did not consult them in hiring decisions. *Id.* at 648-51. She brought claims against the union for breach of duty of fair representation in violation of Section 301 and a pendent ELCRA sex discrimination claim. *Id.* at 651. The union moved to dismiss the plaintiff's ELCRA claim as preempted under both Section 301 and "federal law governing the duty of fair representation" (or the "DFR Preemption Doctrine"). *Id.* at 652. Reviewing the Sixth Circuit authorities cited by the union in support of the latter, the court found that they "simply [were] not the straightforward declarations of law that [the union] represent[ed] them to be" and provided "insufficient basis to render the broad ruling on preemption [the union] s[ought]." *Id.* at 659. Also noted was the how the judicial attitude toward preemption of state law claims under federal labor law had shifted:

> Furthermore, in the twenty-seven years since *Brown* was decided, the Supreme Court and the Sixth Circuit have repeatedly retreated from earlier decisions which had held various state law claims preempted under various aspects of federal labor law. *See e.g., Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (narrowing the scope of applicability of section 301 preemption to state law claims requiring interpretation of collective bargaining agreements); *Hawaiian Airlines v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (narrowing scope of RLA preemption of state law claims); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) and *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (narrowing scope of ERISA preemption).

*Id.* Accordingly, the court found insufficient basis in Sixth Circuit authorities to support a broad application of the "DFR Preemption Doctrine." *Id.* at 659.

*Bredesen* was decided 21 years ago, but nothing suggests that the legal landscape has changed. The court has not found any Sixth Circuit authority directly addressing whether the judicially created federal duty to fairly represent rooted in

16

Section 9(a) the NLRA preempts state discrimination claims, and none have been offered. *See Pratt*, 939 F.2d at 392, n.2 (nothing that "[t]he scope of preemption under Section 9(a) is largely a new area of the law"); *Banks v. Alexander*, 294 F. App'x 221, 226 (6th Cir. 2008) (declining to address the issue of whether § 9(a) of the NLRA completely preempts state-law claims that come within its scope because Section 301 preemption applies). On the other hand, other federal circuit courts have recently found that NLRA's duty of fair representation does not preempt state discrimination laws. *Figueroa v. Foster*, 864 F.3d 222, 233 (2d Cir. 2017) ("There is no evidence that the NLRA's duty of fair representation was designed or intended to preempt state laws focused on combatting invidious discrimination."); *Markham v. Wertin*, 861 F.3d 748, 759 (8th Cir. 2017) (rejecting the argument that the NLRA's duty of fair representation preempts state discrimination and retaliation claims).

In short, Plaintiff's ELCRA claims against Union Defendants (Counts XI and XIII) will not be dismissed based on the "DFR Preemption Doctrine."

### b.  *Subject Matter Jurisdiction*

That Plaintiff's ELCRA claims are not federally preempted does not end the court's inquiry. Being a court of limited jurisdiction, the court must decide whether it should exercise supplemental jurisdiction over these state claims. *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) (saying that federal courts "have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*.") (citations omitted).

Under 28 U.S.C. §1367(c), the court "may decline to exercise supplemental jurisdiction over a claim" even where it arguably has supplemental jurisdiction under 28 U.S.C. §1367(a) if:

>   (1) the claim raises a novel or complex issue of [s]tate law,

>   (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

>   (3) the district court has dismissed all claims over which it has original jurisdiction, or

>   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

As the Supreme Court has said:

>   Depending on a host of factors []—including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims—district courts may decline to exercise jurisdiction over supplemental state law claims. The statute [§1367(c)] thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."

*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

With the rulings in this opinion and order, no federal claim remains as to Union Defendants except the Section 301 breach of DFR claim against Local 51. This situation is like that in *Gaines v. Blue Cross Blue Shield of Michigan*, 261 F. Supp. 2d 900 (E.D. Mich. 2003) (Gadola, J.). There, having found that the action was appropriately removed to federal court because the plaintiff's breach of contract claim against the defendant was preempted by Section 301, the court declined to exercise supplemental

jurisdiction over the remaining state law claims, including a sexual harassment claim

brought under ELCRA. The court observed:

> Litigation in the federal courts involving federal law claims together with supplemental state law claims has caused procedural and substantive problems. Although the federal and state claims in this action appear to arise out of the same factual situation, litigating these claims together may not serve judicial economy or trial convenience.
>
> Because federal and state law each have a different focus, and because the two bodies of law have evolved at different times and in different legislative and judicial systems, in almost every case with supplemental state claims, the courts and counsel are unduly preoccupied with substantive and procedural problems in reconciling the two bodies of law and providing a fair and meaningful proceeding.
>
> The attempt to reconcile these two distinct bodies of law often dominates and prolongs pre-trial practice, complicates the trial, makes the jury instructions longer, confuses the jury, results in inconsistent verdicts, and causes post-trial problems with respect to judgment interest and attorney fees. Thus, it appears that in many cases the apparent judicial economy and convenience of the parties' interest in the entertainment of supplemental state claims may be offset by the problems they create.
>
> Such is the case here. Plaintiff's state law claims may substantially expand the scope of this case beyond that necessary and relevant to Plaintiff's § 301 claim, and thus the state law claims substantially predominate. Therefore, the [c]ourt declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

*Id.* at 905-06 (E.D. Mich. 2003).

These well-elaborated judicial economy concerns with concomitantly having

federal and state claims*,* and the substantial predominance of the latter, are similarly

presented in this case. As in *Gaines,* the state discrimination claims against Union

Defendants substantially expand the scope of the occurrences and transactions that are

the subject matter of the federal claims in this action. Here, Plaintiff has contended that

her ELCRA claims against Union Defendants concern "more than improper discipline or

improper representation" entailed in her Section 301 claim against Local 51. (ECF No.

38, PageID.626; *see also* ECF No.41-1, PageID.698). And, Plaintiff's ELCRA claims do not share the same operative facts as Plaintiff's federal claims against FCA because they arise from different wrongful actions by different actors.

Exercising supplemental jurisdiction over Plaintiff's ELCRA claims in this case would also extend the court's constitutionally-limited authority to cover the parties – UAW and Walker – over whom the court no longer has original jurisdiction. Meanwhile, this case is still in its infancy and discovery has not commenced, so relatively little time and effort have been expended on litigating the state claims. *See Harper v. AutoAlliance Int'l, Inc.,* 392 F.3d 195, 211 (6th Cir. 2004) (holding that the district court did not abuse discretion in retaining supplemental jurisdiction over the state claims when the case has been pending for a while, the parties had completed discovery, plaintiff abandoned his federal claim late, and defendants' summary judgment motion were ripe for decision). As such, the court finds that the interests against needlessly deciding state law issues in this instance outweighs the desire to avoid delay, increased costs, and multiplicity of litigation. *Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993) (citing *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991)).

Accordingly, the court will decline to exercise supplemental jurisdiction over Plaintiff's ELCRA claims against Union Defendants. Count XI and XIII of Plaintiff's Amended Complaint will be dismissed without prejudice.

## B. FCA's MOTION

### 1. Wrongful Discharge Claim (Count I)

As indicated above, Section 301 "preempts any state-law claim arising from a breach of a collective bargaining agreement." *Smolarek.,* 879 F.2d at 1329. A claim,

20

however, is only preempted if the application of state law "requires the interpretation of a collective bargaining agreement." *Lingle,* 486 U.S. at 413. In other words, "state tort claims can be maintained so long as they arise independently of the collective bargaining agreement." *Gilreath,* 212 F. App'x at 462. The Sixth Circuit has identified a two-pronged inquiry to determine whether a state-law claim is preempted by § 301.

> First, the district court must examine whether proof of the state law claim requires the interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne [sic] of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

*DeCoe v. Gen. Motors Corp.,* 32 F.3d 212, 216 (6th Cir.1994) (internal citations omitted).

In response to FCA's contention that Plaintiff's wrongful discharge claim is preempted by Section 301, Plaintiff states that she has sufficiently pled a wrongful termination claim based on a contractual agreement or legitimate expectation for just-cause employment created by FCA's policies and procedures separate from the CBA. (ECF No. 37, PageID.581-87.) Presumably as an alternative, Plaintiff asserts that her claim for wrongful termination was for a violation of public policy in accordance with the ELCRA. Both arguments fail.

### a.  Just Cause Termination

"Generally, and under Michigan law by presumption, employment relationships are terminable at the will of either party." *Lytle v. Malady,* 458 Mich. 153, 163 (1998) (citing *Lynas v. Maxwell Farms,* 279 Mich. 684, 687 (1937)). This "presumption of employment at will can be rebutted so that contractual obligations and limitations are imposed on an employer's right to terminate employment." *Id.* (citing *Toussaint v. Blue*

*Cross & Blue Shield of Michigan,* 408 Mich. 579 (1980)). To overcome the presumption of employment at will, Plaintiff must establish "either a contract provision for a definite term of employment, or one that forbids discharge absent just cause." *Id.* (citing *Rood v. General Dynamics Corp.,* 444 Mich. 107, 117 (1993)). To prove a wrongful discharge claim based on legitimate expectations – the claim asserted by Plaintiff (ECF No. 28, PageID. 393-94) – Michigan law requires her to satisfy a two-step inquiry. "The first step is to decide 'what, if anything, the employer has promised,' and the second requires a determination of whether that promise is 'reasonably capable of instilling a legitimate expectation of just-cause employment.'" *Lytle,* 458 Mich. At 164-65 (quoting *Rood,* 222 Mich. At 138-39) (alteration in original omitted).

Contrary to Plaintiff's assertions, the Amended Complaint does not sufficiently plead legitimate expectation of for-cause employment independently created by FCA's policies and procedures. The only policy and procedures concerning the termination of Plaintiff's employment referenced in the Amended Complaint are portions of the CBA. (ECF No. 28, PageID.375-76.) Other than those, the Amended Complaint merely asserts that "[FCA's] policies and procedures, which were reasonably related to employee discharge, instilled legitimate expectations of just-cause employment in [FCA's] employees, including Plaintiff." (*Id.*, PageID.393-94.) However, such conclusory allegations masquerading as facts do not suffice and are not entitled to be assumed true. *Iqbal*, 556 U.S. at 678.[13]

---

[13]     Plaintiff claims that she has sufficiently pled FCA Diversity department's anti-retaliation policies and procedures as promising her job security. (ECF No. 37, PageID.586.) Plaintiff does not specify where in the Amended Complaint this was alleged, and the court cannot locate any allegation sufficient to support this assertion.

### b. *Public Policy Violation*

Alternatively, Plaintiff asserts that her discharge was wrongful because it violates the anti-retaliation policy enunciated in the ELCRA. (ECF No. 37, PageID.588-59). The court agrees with FCA that this was not asserted in the Amended Complaint. Regardless, it would have been preempted by Title VII and ELCRA, which specifically proscribe retaliatory discharge and under which Plaintiff has already brought claims. *Kimmelman v. Heather Downs Mgmt. Ltd.*, 278 Mich. App. 569, 573 (2008) ("[W]here there exists a statute explicitly proscribing a particular adverse employment action, that statute is the exclusive remedy, and no other public policy claim for wrongful discharge can be maintained."); *Vagts v. Perry Drug Stores, Inc.*, 204 Mich. App. 481, 485 (1994) ("[W]here a statute confers upon a victim of retaliation the right to sue, that person may not also assert a claim of discharge in violation of public policy under *Suchodolski*.") (citations omitted); *Briggs v. Univ. of Detroit-Mercy*, 22 F. Supp. 3d 798, 807 (E.D. Mich. 2014), *aff'd*, 611 F. App'x 865 (6th Cir. 2015) (Cleland, J.) ("[I]n Michigan, 'a public policy claim is sustainable only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue.' . . . Where a statute prohibits the conduct at issue, 'Michigan courts have consistently denied a public policy claim.'") (citation and alteration in original omitted); *Sulieman v. St. John Hosp. & Med. Ctr.,* No. 2:07-CV-15426, 2009 WL 10680532, at *7 (E.D. Mich. June 26, 2009) (Friedman, J.) ("Under the [ELCRA,] an employer is prohibited from retaliating or discriminating against a person who has opposed any violation of the act. . . Therefore, Plaintiff's exclusive remedy is to bring a claim of retaliation under the applicable state statute, and his public policy claim is dismissed.").

Because Plaintiff has not sufficiently alleged a wrongful discharge claim based on a right created outside of the CBA, it is preempted by Section 301. Count I will thus be dismissed with prejudice.

### 2. Breach of CBA Claim (Count VIII)

FCA's request for dismissal of the breach of CBA claim is entirely contingent on the dismissal of Plaintiff's breach of DFR claim against Union Defendants. (ECF No.32, PageID.492.) That condition is not met, for the court has not dismissed Plaintiff's DFR claim against Local 51. Thus, Plaintiff's breach of CBA claim against FCA will not be dismissed.

### IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that FCA's "Motion to Dismiss Count I and VIII of Plaintiff's Amended Complaint" (ECF No. 32) and Union Defendants' "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (ECF No. 34) are GRANTED IN PART and DENIED IN PART. Counts I and X, in their entirety, and Count IX, as to UAW and Walker, are DISMISSED WITH PREJUDICE. Counts XI, XII, XIII, and XIV are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's "Motion for Leave to File Sur-Reply to Union Defendants' Reply Brief in Support of Motion to Dismiss" are GRANTED IN PART as provided in this opinion and order, and otherwise TERMINATED AS MOOT.

s/Robert H. Cleland  /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: December 8, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 8, 2022, by electronic and/or ordinary mail.

s/Lisa Wagner   /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\22-10449.CUTRIGHT.MotionstoDismiss.NH.v3.docx